UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

Michelle J. Darr,

        Plaintiff,

v.

WRB Refining LP and Phillips 66 Company,

        Defendants.

C.A. No. 3:17- cv - 1355
JURY TRIAL DEMANDED

## COMPLAINT

### I. NATURE OF ACTION

1. This is an action for damages and injunctive relief resulting from WRB Refining LP and Phillips 66's responsibility for plaintiff's discharge. This action arises under the Americans With Disabilities Act, 42 U.S.C. §12101, *et seq.* ("ADA"), as amended. Plaintiff has multiple sclerosis (MS). She worked at the Phillips 66 Refinery in Wood River, Illinois, which is owned by WRB Refining Partnership, a joint venture of Cenovus Energy and Phillips 66. A contractor, CTI Field Services, Inc., paid Darr, but since 2003 all of her work has been at the Wood River Refinery whether paid by CTI or a different contractor. As such, CTI and defendants employed plaintiff as her "joint" employer. Because defendants participated in a contractual relationship with CTI, which is a "covered entity" under the ADA, defendants are liable for their conduct even if not considered plaintiff's joint employer.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction of this action under 28 U.S.C. § 1331 and 42 U.S.C. §12117, incorporating 42 U.S.C. §2000e-5(f).

3. The unlawful employment practices described herein were committed within Madison County, Illinois. Accordingly, venue in the Southern District of Illinois is proper.

## III. PARTIES

4. Darr was employed as a Designer, working at the Phillips 66 Refinery.

5. Defendant WRB Refining LP and Phillips 66 Company are foreign corporations doing business in Madison County, Illinois.

6. Defendants WRB Refining LP and Phillips 66 are "covered entities" within the meaning of the ADA, 42 U.S.C. § 12111(2) in that each is an "employer."

7. Defendant WRB Refining LP is an employer within the meaning of the ADA in that it is engaged in an industry affecting commerce and has continuously employed at least 15 employees.

8. Defendant Phillips 66 Company is an employer within the meaning of the ADA in that it is engaged in an industry affecting commerce and has continuously employed at least 15 employees.

## IV. FACTUAL ALLEGATIONS

9. Plaintiff began working at the Wood River Refinery—then called Conoco Phillips—in 2003 as a drafter. When she began working at the Wood River Refinery, she was paid by a contractor, Emerson.

10. Plaintiff continuously worked at the Wood River Refinery site from 2003, whether for Emerson or another contractor, CTI, until she was fired in 2015.

11. Upon information and belief, CTI and defendants had a contractual relationship.

12. Plaintiff worked inside the Phillips 66 facility, using Phillips 66 supplies and Phillips 66 computers and software.

13. When plaintiff arrived at work each day at the Phillips 66 facility, she parked in a Phillips 66 parking lot and went through a Phillips 66 gate.

14. Upon information and belief, Phillips 66 approved pay raises for CTI employees.

15. Plaintiff was required to follow Phillips 66 work rules such as prohibitions on photographs, cellphones, and radios.

16. Phillips 66 provided safety and other training to plaintiff.

17. Plaintiff was required to perform periodic audits of projects and then provided the information directly to Phillips 66.

18. Upon information and belief, plaintiff's work was assigned based on instructions from a Phillips 66 employee. Plaintiff's supervisor, Joe Neyer, worked for another contractor, Maverick. After Neyer met with Phillips 66 employee Scott Gallagher, Neyer distributed work to plaintiff and other designers, some of whom were CTI employees. Gallagher was the Process Control/Projects Team Leader.

19. When plaintiff completed a bid-package drawings, she printed them out and delivered them to Scott Gallagher for his review. Gallagher would sometimes meet

with plaintiff regarding the drawings, sign-off on the drawings and return them to plaintiff, or red-line the drawings with instructions for changes.

20. In 2014, plaintiff was diagnosed with multiple sclerosis (MS).

21. MS is a disease of the nervous system which disrupts the transmission of nerve signals that communicate information from the brain, through the spinal cord, to various parts of the body, thus limiting the operation of a major bodily function. As such, MS limits one or more major life activities as that term is defined in the Americans With Disabilities Act, 42 U.S.C. § 12102(2)(B), which is expressly incorporated into § 12101(1)(A).

22. Plaintiff notified the Chief Financial Officer of CTI, Alan Shaake, of her diagnosis.

23. Shaake told plaintiff that Gallagher wanted her to go to the plant doctor, meaning Phillips 66's plant doctor.

24. On December 4, 2014, plaintiff was seen by Dr. Dirker at Midwest Occupational Medicine in Wood River, Illinois. Dr. Dirker, who gave plaintiff the fitness-for-duty evaluation, determined plaintiff should be able to perform her usual job functions and recommended avoiding hand-over-hand climbing.

25. Defendants did not require plaintiff to have any other fitness-for-duty examinations or to report the results of any testing.

26. Defendants did not impose any restrictions on plaintiff's employment because of the December 4, 2014 fitness-for-duty examination.

27. CTI instructed plaintiff to keep Gallagher or his delegate updated on plaintiff's work plan.

28. Before plaintiff was diagnosed with MS, she performed her job in a satisfactory manner.

29. After plaintiff was diagnosed with MS, she continued to perform her job in a satisfactory manner.

30. In August 2015, Gallagher sent plaintiff an email in which he asked her to meet with him regarding her MS.

31. On September 1, 2015, plaintiff met with Gallagher in his office—in the trailer where they both worked. Gallagher said plaintiff was no longer permitted to go into the plant, which she occasionally did. He said he had seen plaintiff stumble while walking to her car and he didn't think it was safe for her to be out there. Gallagher said he could see about plaintiff going to the main office, referring to a different type of job and that he would see if a particular person—another coordinator—had a job up there.

32. Prior to her firing ten days later, Gallagher did not communicate with plaintiff again about another job, nor did he discuss with her a possible fitness-for-duty examination.

33. On September 10, 2015, Shaake called plaintiff and said tomorrow would be her last day. Shaake said Phillips 66 and Gallagher notified him the day before that said they no longer had work for plaintiff.

### V. Charge Filing and Right to Sue

34. On or about November 20, 2015, plaintiff filed a Charge of Discrimination in which she alleged defendants discriminated against her based on her disability. Exhibit 1, incorporated herein.

35. On September 28, 2017, the EEOC issued a Notice of Right in connection with plaintiff's Charge. Exhibit 2.

36. Plaintiff filed this lawsuit within 90 days of receiving the Notice of Right to Sue, Exhibit 2.

### VI. Claims under Americans With Disabilities Act, 42 U.S.C. § 12101, et seq.

37. Plaintiff had, at all relevant times, a physical impairment, which substantially limits a major life activity, as described above in Paragraph 21; she had a record of that impairment; and, defendants regarded her as having an impairment.

38. Plaintiff, at all relevant times, was a "qualified individual" within the meaning of the ADA, 42 U.S.C. § 12111(8), in that she with or without a reasonable accommodation could have performed the essential functions of her job as a Designer.

39. Plaintiff was paid by CTI Field Services, Inc. which is a "covered entity" within the meaning of the ADA in that it had at all relevant times at least 15 employees and was engaged in commerce.

40. Defendants discharge of plaintiff, as her joint employer, and causing her discharge by CTI Field Services, Inc., through its participation in a contractual relationship with CTI, because of her disability violated the ADA, 42 U.S.C. § 12112(a).

41. Defendants' violation of the ADA was with malice or reckless indifference to plaintiff's federally protected rights.

42. As a direct and proximate result of defendant's conduct, plaintiff was damaged in that she has lost wages and other benefits of full employment.

WHEREFORE, plaintiff requests this Court enter judgment in her favor and against Defendants by:

A. Declaring that the acts and practices by defendants as described herein constitute a violation of the ADA;

B. Enjoining and permanently restraining these violations of the ADA;

C. Awarding plaintiff her back wages and lost benefits and interest due to Defendants' violations of the ADA;

D. Directing defendants to reinstate plaintiff to her previous position or, in the alternative, awarding plaintiff front pay;

E. Awarding plaintiff compensatory and punitive damages;

F. Awarding plaintiff attorneys' fees and costs; and

G. Awarding plaintiff such further and additional relief as the Court may deem just and proper.

/s/ Ferne P. Wolf
SOWERS & WOLF, LLC
D. Eric Sowers
es@sowerswolf.com
Ferne P. Wolf
fw@sowerswolf.com
Joshua M. Pierson
jp@sowerswolf.com
530 Maryville Centre Dr., Suite 460
St. Louis, MO 63141
314-744-4010/314-744-4026 (fax)